**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**DANIELLE BUSCAINO,**

            **Plaintiff,**

    v.

**DIRCKSEN & TALLEYRAND, INC. d/b/a
RIVER CAFE and ARIEL ECHEVERRIA,**

            **Defendants.**
-----------------------------------------------------------x

**CASE NO.: 22 CV 7572**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Danielle Buscaino alleges as follows:

### INTRODUCTION

1.     Plaintiff Danielle Buscaino worked for the famous, and sometimes infamous, River Café in Dumbo, Brooklyn from August 2019 through December 2021.

2.     The River Café, a Michelin rated restaurant, is famous for its romantic views of the New York City skyline and its sumptuous high-end menu. It is also famous for being the training ground for its roster of wildly successful chefs.

3.     The Restaurant has employed just six chefs in its more than 40 years in business, all of whom went on to national prominence – and all of whom are men: Larry Forgione, Charlie Palmer, David Burke, Rick Moonen, Rick Laakkonen and the current chef of nearly two decades, Brad Steelman.

4.     Although one of just a handful of female employees in the kitchen at that time, Plaintiff Buscaino quickly proved her mettle and was on the verge of promotion to junior sous chef in December of 2021. But when the male sous chef heard of her potential promotion, he threw a fit - and lamb chops - toward Plaintiff Buscaino and opposed her advancement.

1

5. Before Plaintiff requested a promotion, the male sous chef, Ariel Echevarria, regularly complimented her work and her "pretty" appearance. But when he learned of her aspirations, he became critical and violent.

6. Rather than protect Plaintiff from his illegal and violent harassment, The River Café doubled down, protected the harasser, and terminated Plaintiff for complaining.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). This Court has supplemental jurisdiction over the New York law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

9. Defendant Dircksen & Tallyrand, Inc. d/b/a River Cafe (the "River Cafe" or the "Restaurant") is a New York corporation that owns a restaurant located in Brooklyn, New York. The Restaurant is owned and operated by Michael "Buzzy" O'Keefe.

10. The River Café has more than 15 employees, and it was Plaintiff's employer under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

11. Defendant Ariel Echevarria ("Defendant Echevarria") is the Sous Chef at River Café. Defendant Echevarria was one of Plaintiff Buscaino's supervisors.

12. Plaintiff Danielle Buscaino ("Plaintiff" or "Buscaino") worked for Defendant as a line cook from August of 2019 until her retaliatory termination on December 20, 2021.

13. A true and correct copy of Plaintiff's right to sue issued by the EEOC is attached hereto as **Exhibit 1**.

## FACTS

14. Plaintiff joined River Cafe in August 2019 after graduating from the prestigious Culinary Institute of America. At the time, Plaintiff was one of nine line cooks working under renown Executive Chef Brad Steelman and Sous Chef Ariel Echevarria.

15. Defendant Echevarria often noticed and commented on Plaintiff's conscientious work ethic, talent in the kitchen, and clean work station.

16. He also often commented on Plaintiff's appearance, saying she was "so pretty" and making comments about her physical appearance whenever she was not in her uniform. Defendant Echevarria also told Plaintiff that she did not "have to worry about things because [she is] a cute girl."

17. Defendant Echevarria made these inappropriate comments about her appearance on a daily basis.

18. Plaintiff knew the comments were inappropriate but did not complain about them in fear of retaliation. Instead, she focused on working hard and proving myself professionally.

19. During her two years with the Restaurant, she received three raises and advanced through all three line cook stations – cold appetizers, hot appetizers and the grill area. Among the line cook stations, the grill area was considered the most senior station.

20. At the River Café, like many high-end restaurants, there is an Executive Chef, Sous Chef and Junior Sous Chef that supervises a team of line cooks and prep cooks. The River Café's

last Junior Sous Chef – also a man – left the Restaurant at the beginning of the Covid-19 pandemic in 2020 and did not return.

21. Thus, the position was open when, in September of 2021, Plaintiff requested a promotion to the Junior Sous Chef position.

22. By September of 2021, Plaintiff was already performing much of the Junior Sous Chef role. She was assisting with menu creation, training new employees, helping with events and expediting the line among the line cooks when Defendant Echevarria or Mr. Steelman were not in the kitchen.

23. Plaintiff approached Mr. Steelman in August of 2021 to discuss her interest in the Junior Sous Chef position.

24. Mr. Steelman told Plaintiff that he could "definitely see [her] in that role," but needed to speak with Restaurant owner Michael "Buzzy" O'Keefe, Defendant Echevarria, and General Manager Scott Stamford. At the same time, he awarded Plaintiff a raise immediately to bring her compensation up to the level of Junior Sous Chef.

25. Several weeks later, Mr. Steelman told Plaintiff that he would like to see her become the next Junior Sous Chef once she had additional work experience with the pastry department of the Restaurant.

26. Shortly after Plaintiff's initial conversation with Mr. Steelman about her desired promotion, Defendant Echevarria completely changed his behavior toward Plaintiff. He made it very clear to her that as long as she was eye candy and an underling, she had his approval, but when she was positioned to advance professionally, Defendant Echevarria began criticizing everything she did in the kitchen.

27. For example, if Plaintiff spoke to her colleagues while working, Defendant Echevarria would become enraged. At the same time, he would speak to Plaintiff's male colleagues regularly, and he allowed the two male line cooks working next to her to chat constantly without repercussion. Even when Plaintiff's male counterparts worked slowly, Defendant Echevarria would not criticize them.

28. It became clear that Defendant Echevarria appreciated Plaintiff's work and talent just as long as she stayed in a low-level role. Once it was apparent that she would be rising within the Restaurant ranks, Defendant Echevarria opposed her deserved advancement and subjected her to heightened scrutiny and humiliating and aggressive harassment. Defendant Echevarria began responding to Plaintiff's questions by glaring at her, shaking his head and huffing and puffing instead of speaking.

29. On or about December 17, 2021, at the end of the dinner shift, Plaintiff started cleaning her work station, washing and putting away her tools, and storing food items as required.

30. When Plaintiff stepped away from her work station momentarily to put some bottles away, Defendant Echevarria screamed at her. He yelled, "You're nothing! You're not above anyone! You can't just stand there!"

31. When Plaintiff attempted to explain that she was not done cleaning up, Defendant Echevarria interrupted her, screaming again, "You never fucking do anything! I always have to clean up after you!"

32. Because of the violence of Defendant Echevarria's sudden rage, Plaintiff immediately approached Mr. Steelman and complained about Defendant Echevarria's wholly unprofessional and threatening behavior. Plaintiff also complained that Defendant Echevarria was criticizing her for the same behavior he ignores in her male colleagues. In Plaintiff's conversation

with Mr. Steelman, she added that Defendant Echevarria was angry with her because she is a woman and she wanted to advance in the Restaurant, and that his behavior deteriorated when he learned of her aspirations for the Junior Sous Chef role. Initially, Mr. Steelman said he did not think Defendant Echevarria's behavior was gender-related, but Plaintiff assured him that it definitely was motivated by her gender.

33. Mr. Steelman, having witnessed Defendant Echevarria's harassment toward Plaintiff in the kitchen prior to that night, responded saying that he "saw this coming" and promised to come to the kitchen to speak with Defendant Echevarria.

34. When Mr. Steelman and Plaintiff returned to the kitchen area, Plaintiff attempted to return her supplies, including a tray of lamb, back into storage. Before she could do that, Defendant Echevarria grabbed the large hunk of lamb and threw it toward her while screaming uncontrollably once again and literally foaming at the mouth. He yelled, "You're not going to fucking clean up anything! I'm going to have to clean up everything. I'll just do all your fucking work!"

35. Although Mr. Steelman witnessed the incident, he did not step in or stop Defendant Echevarria's violent behavior.

36. Clearly fearing for Plaintiff's safety in the face of Defendant Echevarria's rage, Mr. Steelman instructed Plaintiff to leave work at that moment and told her to take the next day off with pay to "do [her] Christmas shopping."

37. Despite the incident with Defendant Echevarria, Plaintiff came to the Restaurant early the next morning to set up her station for the other line cooks, knowing that it was going to be a busy day for the Restaurant.

38. Later that day, Plaintiff received a call from General Manager Scott Stamford telling her not to come to work Sunday, December 19, 2021, either "until we figure everything out."

39. Plaintiff's father also called Mr. Steelman on or about December 18, 2021, to inquire about the violent incident. Mr. Steelman plainly understanding that Defendant Echevarria was in the wrong and that his behavior should be addressed, assured Plaintiff's father that he would "work everything out."

40. Then, on Monday, December 20, 2021, River Café, chose to terminate Plaintiff for complaining about Defendant Echevarria's behavior instead of addressing or correcting his violent and illegal behavior. Mr. Stamford called Plaintiff that day and fired her for what he described as "insubordination." He said that based on what Defendant Echevarria and others told him, Plaintiff was trying to leave work prematurely on December 17, 2021 without permission – an utterly preposterous allegation given that Mr. Steelman instructed Plaintiff to leave work that night. Mr. Stamford refused to identify who, besides Defendant Echevarria, had accused Plaintiff of leaving work prematurely. He said Plaintiff had no right to know who the information came from and no right to discuss the matter in person.

41. After two years of excellent work and not a single disciplinary issue, Plaintiff was fired just days after complaining of gender discrimination.

42. Plaintiff requested a meeting to discuss what had actually happened with Restaurant management. Mr. Stamford denied her request.

43. As a result of River Café's intentional and discriminatory conduct, Plaintiff has suffered emotional distress, monetary and non-monetary damages.

7

**FIRST CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. §§ 2000e, *et seq.* – Discrimination)**

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

45. In violation of Title VII, Defendant intentionally discriminated against Plaintiff on the basis of her gender and subjected her to a gender-based hostile work environment.

46. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

47. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

48. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. §§ 2000e, *et seq.* – Retaliation)**

49. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

50. In violation of Title VII, Defendant retaliated against Plaintiff for opposing and complaining about gender discrimination.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

52. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

53. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.* - Discrimination)

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

55. In violation of the NYSHRL, Defendant intentionally discriminated against Plaintiff on the basis of her gender.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

57. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

58.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
**(New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. Law §§ 290 *et seq.* - Retaliation)**

59.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

60.     In violation of the NYSHRL, Defendant retaliated against Plaintiff for opposing and complaining about gender discrimination.

61.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

62.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

63.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* - Discrimination)

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

65. In violation of the NYCHRL, Defendant intentionally discriminated against Plaintiff on the basis of her gender.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

67. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

68. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

69. The New York City Commission on Human Rights will be notified and sent a copy of this complaint.

## SIXTH CLAIM FOR RELIEF
### (New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* – Retaliation)

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

71. In violation of the NYCHR, Defendant retaliated against Plaintiff for opposing and complaining about gender discrimination.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered monetary and non-monetary damages, including but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

73. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

74. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**(New York State Human Rights Law – N.Y. Exec. Law § 296(6) –**
**Aiding and Abetting Discrimination)**
**As against Defendant River Cafe**

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

76. In violation of the NYSHRL, Defendant River Cafe aided and abetted discrimination against Plaintiff on the basis of her gender.

77. As a direct and proximate result of Defendant's aiding and abetting discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

78. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to

emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

79. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

80. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including compensatory damages and punitive damages, to be paid by Defendants;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Pre-judgment and post-judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

| | |
|---|---|
| Dated: New York, New York<br>December 13, 2022 | Respectfully submitted,<br><br>JOSEPH & KIRSCHENBAUM LLP<br><br>By: /s/ D. Maimon Kirschenbaum<br>    D. Maimon Kirschenbaum<br>    Leah Seliger<br>    32 Broadway, 5th Floor<br>    New York, NY 10279<br>    Tel: (212) 688-5640<br>    Fax: (212) 981-9587<br><br>*Attorneys for Plaintiff* |

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.