JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise Schulman
Josef Nussbaum
Lucas C. Buzzard
Mike DiGiulio
Leah Seliger

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.jk-llp.com

May 17, 2024

**VIA ECF**

Honorable Ann M. Donnelly, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *Buscaino v. Dircksen & Talleyrand, Inc., et al.*, Case No. 22-CV-7572 (AMD)(PK)

Dear Judge Donnelly:

Plaintiff Danielle Buscaino submits this letter in response to Defendants' request for a pre-motion conference on their anticipated summary judgment motion. Plaintiff brought this Action against her former employer, Dircksen & Talleyrand, Inc. ("The River Café"), and Ariel Echevarria, The River Café's Sous Chef. Plaintiff alleges claims of discrimination and retaliation under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

**I.   Factual Background**

Plaintiff was a line cook at The River Cafe. Line cooks are assigned to one of five stations. Plaintiff began on the cold foods station – an entry level position on the line – but quickly moved up to hot appetizers and then the grill station. The grill is considered a higher-level position as it requires significant skill and utilizes the most expensive ingredients. As Plaintiff proved her skill and work ethic, she received four raises during her employment. She was never disciplined or reprimanded for any behavioral issue or concern with her skills.

As Sous Chef, Echevarria was at all times Plaintiffs' supervisor. He supervised and trained the line cooks, evaluated Plaintiff's work performance, and oversaw the entire kitchen in the executive chef's absence. He also was one of the decisionmakers as to whether line cooks, including Plaintiff, were given promotions to higher positions. Throughout her employment, Echevarria routinely commented on Plaintiff's physical appearance, including that she looked good in non-work attire, had pretty eyelashes, and did not have to worry because someone would "take care" of her on account of her looks. These frequent inappropriate comments made Plaintiff very uncomfortable because they were coming from a male supervisor.

In August 2021, Plaintiff spoke with Executive Chef Brad Steelman about filling a Junior Sous Chef role, which had been held by a male employee from 2019 until the restaurant closed in March 2020 due to the COVID-19 pandemic. After that employee did not return when the restaurant reopened, Plaintiff spoke to Steelman about moving into the empty role. Steelman said he could not promote her without first discussing it with Echevarria and others in restaurant management. At the same time, Steelman gave Plaintiff her fourth raise.

Once Echevarria learned Plaintiff aspired to advance in the kitchen, his entire attitude toward her changed. Whereas he had previously complimented Plaintiff's skills – and her physical appearance – frequently; after Plaintiff expressed her interest in advancing, Echevarria became extremely critical. For example, he began yelling at her for talking in the kitchen, while her male companions spoke freely without repercussion. He also began criticizing Plaintiff for not working fast enough even though she worked just as fast as her male colleagues.

Line cooks are responsible for closing their stations each evening, putting away their tools and ingredients, and cleaning. Plaintiff always cleaned along with all the other line cooks. She did not use her phone during this time, did not leave her station dirty, and did not avoid her responsibilities in any way. She was never reprimanded for failing to participate in cleanup or for using her phone, and there is not a single document evidencing issues with her performance.

On December 17, 2021, Plaintiff was closing her station when she stepped away to put away her tools. When she returned, Echevarria began screaming at her that she never did anything and thought she was better than everyone. Shocked at this behavior, Plaintiff walked to Steelman's office to report it. She told Steelman that Echevarria's attacks against her were "because [she is] a woman trying to come up" in the industry. Steelman replied that he "saw this coming," assured Plaintiff he would look into her complaint, and offered her the option of taking the following day off while he investigated. When Plaintiff returned to the kitchen, Echevarria cursed and screamed at her again, then threw a tray of lamb across a table and onto a table near her. Plaintiff did not respond to Echevarria's verbal assaults, but rather packed up her things and left.

Plaintiff accepted Steelman's offer to take the next day off but went to the restaurant early to prepare her station so her colleagues would not have extra work that night. Plaintiff informed Steelman she did this, and he did not object. Neither Steelman nor Stamford conducted any investigation into Plaintiff's complaint. Stamford only questioned employees about the incident <u>a year and a half later</u>, long after this Action was filed. Steelman testified that he did not speak that night to Echevarria or to any of the line cooks working that night.

On December 20, 2021, just three days after Plaintiff's complaint, The River Café terminated her employment. Stamford explained vaguely that her "story" did not match "other people's stories," so she was being terminated. Nobody from The River Café ever said that Plaintiff was terminated for any alleged yelling on December 17, 2021, or for coming to the restaurant the following morning. Defendants terminated Plaintiff for no other reason than complaining about discriminatory behavior by a longstanding male employee.

## II. Defendants Cannot Prevail on Plaintiff's Gender Discrimination Claims

As an initial matter, Plaintiff does not make a failure to promote claim as argued by Defendants in their letter.[1] Moreover, as set forth in Plaintiff's counterstatement of facts, the evidence is not at all "clear" that Plaintiff was "terminated for her inappropriate conduct in the kitchen and disregarding" Steelman's instructions as Defendants assert. *See* Pl. Counterstatement ¶¶ 54-57, 59-64, 69-71, 76-78; Pl. Add'l Facts ¶¶ 128-33, 139-43.

Defendants assert they will prevail on Plaintiff's hostile work environment claims for two reasons: (1) Echevarria was not her supervisor and (2) his behavior toward her was nothing more

---

[1] Indeed, the male chef did not even work at the Restaurant at the time that Plaintiff requested a promotion to the Junior Sous Chef position.

that "petty slights" or "trivial inconveniences." First, Plaintiff, Echevarria, and Steelman all testified that as the Sous Chef, Echevarria supervised the line cooks. Steelman stated that the line cooks report to Echevarria and that he relied on Echevarria to communicate performance issues to the line cooks. Because Echevarria's supervisory authority is clearly disputed, summary judgment is not warranted on this ground. *See* Pls.' Counterstatement ¶¶ 14-16.

Next, Echevarria "frequently" made inappropriate comments about Plaintiff's physical appearance. Pl. Add'l Facts ¶ 113-15. Then, when he learned of her desire for promotion, Echevarria shifted from gender-based compliments to singling her out for unwarranted criticism, holding her to a different standard than male line cooks, screaming and throwing food at her, and directly interfering with her ability to advance in the industry. *Id.* ¶¶ 126-133. This is clearly "severe and pervasive" gender-based conduct that altered the conditions of Plaintiff's employment for purposes of Title VII. And under the less restrictive NYCHRL and NYSHRL, an employee establishes a hostile work environment claim where she has been subjected to sexually harassing comments and is treated less well than her male counterparts. *E.g.*, *Snowden v. Southerton*, 2023 U.S. Dist. LEXIS 89536, at *26 (S.D.N.Y. 2023) (defendants' occasional comments about employee's appearance and holding her to a different standard than employees not in her protected class sufficient for hostile work environment under NYSHRL).

### III.  Defendants Will Not Prevail on Plaintiff's Retaliation Claims

Defendants argue that they will be entitled to summary judgment on Plaintiff's retaliation claims because (1) she did not engage in protected activity because the only people to whom she complained were "two co-workers"; and (2) she purportedly "made clear" at deposition that "Echevarria is the one she claims retaliated against her for allegedly asking for a promotion" and he "was never her supervisor."

First, as set forth above, Plaintiff explicitly testified she complained about Echevarria's discriminatory conduct to Steelman, The River Café's executive chef. *See* Pl. Counterstatement ¶¶ 61, 96; Pl. Add'l Facts ¶¶ 131. Defendants therefore will not be entitled to summary judgment under a theory that Plaintiff failed to engage in protected activity. Second, while Plaintiff identified Echevarria at deposition as an individual who retaliated against her for being a woman who was "seeking a promotion," Defendants failed to ask Plaintiff whether she believed her *termination* was in retaliation for her complaint about Echevarria, which is clearly alleged in her complaint. *See* Compl. ¶¶ 32, 41, 50, 60, 71. Thus, Defendants will not prevail on this argument either. *See* Pl. Counterstatement ¶ 93; Pl. Add'l Facts ¶¶ 131, 141-43.

For the reasons stated herein, Defendants' motion for summary judgment will be a meritless exercise.

Respectfully submitted,

*/s/ Leah Seliger*

Leah Seliger

3

cc: All attorneys of record (via ECF)